**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **JOSEPH GALLANT, JR.**, individually and on behalf of those similarly situated<br>8010 Blair Mill Way, Apt. 1313 E<br>Silver Spring, Maryland 20910<br><br>         Plaintiff<br>   v.<br><br>**EQUIFAX INC.**<br>c/o The Prentice-Hall Corporation System, MA<br>7 Saint Paul Street, Suite 820<br>Baltimore, Maryland 21202<br><br><br>         Defendant | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. 1681, *et seq.***<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Joseph Gallant, Jr. ("Plaintiff"), through Counsel, for himself and on behalf of all others similarly situated and for his Class Action Complaint against Defendant Equifax Inc. ("Equifax"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Joseph Gallant, Jr. is a natural person and at all relevant times has been residing in Montgomery County, Maryland.  Plaintiff is, and at all times relevant was, a "consumer" as that term is understood under 15 U.S.C. § 1681a(c) and Md. Code. Ann., Com. Law § 13-101(c).

2.    Defendant Equifax Inc. is a corporation incorporated under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street NE, Atlanta, GA, and doing business in the State of Maryland.  Equifax operates through various subsidiaries, and each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

3.    Equifax is a "Consumer Reporting Agency" (or "CRA") as that term is defined by 15 U.S.C. § 1681a(f).

4.      Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as that term is defined under 15 U.S.C. § 1681a(p).

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

6.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiff resides within this District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Equifax regularly conducts business in this District.

## INTRODUCTION

8.      The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), to ensure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy.  The FCRA imposes duties on the CRAs to protect consumers' sensitive personal information.

9.      FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's

2

sensitive personal information.   Thus, through FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

10.   A central duty that FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.   15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes."   To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes.   15 U.S.C. § 1681e(a).

11.   FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."   15 U.S.C. § 1681a(d).

12.   FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."   15 U.S.C. § 1681g(a)(1).   Through immediate

review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen.

13.     FCRA also entitles consumers to actively protect their privacy rights in cases of suspected identity theft.  Specifically, a consumer who believes he or she has been the victim of identity theft can submit a fraud alert to a consumer reporting agency.  15 U.S.C. § 1681c-1.  The consumer can either request that the fraud alert be imposed for a 90-day period, or for an extended period of seven years.  15 U.S.C. § 1681c-1(a)-(b).  In the event a consumer requests "extended" protection, a consumer reporting agency must remove the consumer from any list of third parties to whom the agency sends the consumer's information to extend firm offers of credit, and keep the consumer off of any such a list for five years, unless the consumer requests otherwise.  15 U.S.C. § 1681c-1(b)(1)(B).  After being notified of a fraud alert, a CRA must send notification of the alert to the consumer reporting agencies which report information on a nationwide basis.  15 U.S.C. § 1681c-1(a)(1)(B); *see* 15 U.S.C. 1681a(p).

14.     After fraud notification, FCRA provides the consumer additional rights to independently monitor their credit information to protect their privacy.  Specifically, once notified of a consumer's fraud notification, a CRA must, within three days of the notification, provide the consumer with all of the disclosures required under 15 U.S.C. § 1681g.  15 U.S.C. §§ 1681c-1(a)(2), 1681c-1(b)(2).  When a consumer requests that an "extended" fraud alert be placed on their files, the consumer is entitled to request two free disclosures under 15 U.S.C. § 1681g within the 12-month period following notification of a fraud alert.  15 U.S.C. § 1681c-1(b).

4

15.     Thus, through immediate review of the details of when, and for what purpose, a consumer's private information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen.  And through semi-annual review of their consumer disclosures in the case of an "extended" alert, a consumer can periodically check to determine whether efforts to protect their identity after potential fraud have not been successful. Thus, FCRA presupposes that consumers subject to potential fraud should be permitted the immediate opportunity to investigate the issues themselves and ascertain the extent of any suspected fraud.

16.     Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Defendant in the protection and safekeeping of Plaintiff's and the Class Members' personal information.

17.     Defendant failed to properly safeguard the information of Plaintiff and the Class Members, as required under 15 U.S.C. § 1681e(a).

18.     Additionally, Defendant's failure to properly safeguard the information of Plaintiff and Class Members constitutes a violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq., i.e.,* an unfair or deceptive trade practice by failing to safeguard an on-going consumer service.  Accordingly, relief under Md. Code Ann., Com. Law § 13-303 is warranted to prevent Defendant from forcing Plaintiff and the Class Members to subject themselves to arbitration.

## GENERAL ALLEGATIONS

19.     Equifax, a global corporation, "organizes, assimilates and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide, and its database includes employee data contributed from more than 7,100 employers." (http://www.equifax.com/about-equifax/company-profile/ (September 11, 2017)).

20.     The data Equifax stores includes Plaintiff's and Class Members' personal identifying information, such as names, full Social Security numbers, birth dates, addresses, driver's license numbers, and credit card numbers (collectively, "PII").   At all relevant times, Equifax knew or should have known that the PII it collected and stored is valuable, highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties.

21.     In 2011, the State of Maryland Department of Human Resources partnered with Equifax to increase efficiencies and reduce fraud with regard to the distribution of government entitlement benefits to Maryland recipients.  (*See Credit Rating Firm Helps State Validate Welfare Recipients*, Rebecca Lesner, MARYLANDREPORTER.COM, June 30, 2015, available at: http://marylandreporter.com/2015/06/30/credit-rating-firm-helps-state-validate-welfare-recipients/).  Maryland consumers therefore have a unique relationship with Equifax.

22.     On July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiff's sensitive personal information including Plaintiff's name, full Social Security number, birth date, address, and, upon belief, his driver's license number and possibly one or more of his credit cards, had been breached or "hacked" by a still unknown third party.

23.     Upon belief, when Equifax discovered this breach, Equifax immediately began an internal investigation and contracted with an unidentified third-party cybersecurity firm to conduct a comprehensive forensic review to determine the scope of the hack including identifying the specific data impacted.  As of the filing of this Complaint, that investigation remains ongoing and has yet been completed despite over six weeks elapsing since the initial breach.

24.     On September 7, 2017, major news outlets began reporting about the July 29, 2017 incident.  (*See, e.g.*, *Massive Equifax Data Breach Could Impact Half of the U.S. Population*, Alyssa Newcomb, NBCNEWS, Sept. 7, 2018, available at: https://www.nbcnews.com/tech/security/massive-equifax-data-breach-could-impact-half-u-s-population-n799686).

25.     For Plaintiff, as with all potential Class Members, these news stories were the first time that they had been informed that their information secured by Equifax had been compromised six (6) weeks earlier, and they now live in constant fear that their information has been compromised.

26.     After Equifax discovered the breach but before notifying Plaintiff, Class Members, and all other consumers, three (3) Equifax executives, including the Chief Financial Officer, John Gamble, sold shares of Equifax stock worth a combined $1,800,000. (*See, e.g.*, *Equifax Faces Multibillion-Dollar Lawsuit over Hack,* Polly Mosendz, BLOOMBERG, Sept. 8, 2017, available at: ccccc).

27.     Equifax's decision to wait six (6) weeks after the alleged data breach before informing all consumers of the same was willful, or at least negligent.  Further, by depriving

Plaintiff and Class Members' timely information about the breach, Equifax subjected each consumer to a concrete informational injury, as these consumers were deprived of their opportunity to meaningfully consider and address issues related to the potential fraud, as well as to avail themselves of the remedies available under FCRA to prevent further dissemination of their private information.

28.     Equifax has been subject to numerous allegations regarding data breaches in the past.  (*See, e.g.*, *A Brief History of Equifax Security Fails,* Thomas Fox-Brewster, FORBES, Sept. 8, 2017, available at: https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-data-breach-history/#63dc4270677c).  In light of Equifax's continual failure to ensure the integrity of its file storage systems given known defects in those systems, Equifax recklessly, willfully, or at the very least, negligently failed to use reasonable care or to enact reasonable procedures and/or technological safeguards to ensure that consumer reports would only be provided for a permissible purpose.  By failing to establish reasonable procedures to safeguard individual consumer's private information, Equifax deprived millions of consumers of a benefit conferred on them by Congress, which, now lost, cannot be reclaimed.

29.     Equifax knew or should have known that failing to protect consumers' PII from unauthorized access would result in a massive data breach and would expose consumers to serious harm such as identity theft.

30.     The unauthorized disclosure and dissemination of private credit information causes immediate harm.  At the time that the unauthorized breaches occurred, Plaintiff and the Class Members began to incur, and continue to incur, such harm.

31.     Furthermore, the PII that unauthorized third parties took from Equifax includes multiple types of sensitive information on a single person, the aggregate value of which is greater than the sum of each individual datum.  This further exacerbates the extent of Plaintiff's and the Class Members' injuries.

32.     Defendant's acts and omissions have diminished the value of Plaintiff's and the Class Members' PII.

33.     As a direct and proximate result of Equifax's acts and/or omissions, Plaintiff and the Class Members have suffered imminent and impending injury arising from the subsequently increased risk of future fraud, identity theft and misuse of their PII.

34.     On September 7, 2017, Equifax began to offer consumers like Plaintiff and Class Members an allegedly  dedicated secure website where consumers could determine if their PII was compromised  (https://www.equifaxsecurity2017.com)  and  offer  consumers  "free"  credit monitoring     through     an     Equifax     product,     TrustedID     Premier (https://www.equifaxsecurity2017.com/enroll/), for one year.

35.     However under the guise of providing victims the opportunity to mitigate their damages, Equifax offered Class Members free access to its TrustedID Premier service,  the terms and conditions of which require that the victims, including Plaintiff and Class Members, waive their right to bring or participate in a class action lawsuit and require them to submit to arbitration (http://www.equifax.com/terms/).  These actions are yet another avenue by which Equifax has deprived Plaintiff and the Class Members of the ability to avail themselves of the remedies available under FCRA and to prevent further dissemination of their private information.

## CLASS ALLEGATIONS

36.     Plaintiff brings this action on behalf of a nationwide class of all similarly situated individuals ("Nationwide Class"), defined as: "all persons in the United States for whom Equifax stored private, personal information that was released as a result of the data breach."

> Excluded from the Nationwide Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Nationwide Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

37.     Plaintiff also brings this action on behalf of a subclass of all similarly situated individuals in Maryland ("Maryland Class"; and together with the Nationwide Class, "Class Members"), defined as: "all persons in Maryland for whom Equifax stored private personal information that was released as a result of the data breach."

> Excluded from the Maryland Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Maryland Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

38.     At this time, Plaintiff does not know the size of the Nationwide Class or Maryland Class because the information is exclusively in the possession of Defendant, but Plaintiff believes that the potential number of Class Members is so numerous that joinder, as to each respective class, would be impracticable.  It has been reported that the Nationwide Class could consist of over 100

10

million people.  The number of Nationwide Class Members and Maryland Class Members can be determined through discovery.

39.     All members of the Nationwide Class have been subject to and affected by a uniform course of conduct in that all Nationwide Class Members' personal information was compromised during the data breach.

40.     There are questions of law and fact common to the proposed Nationwide Class that predominate over any individual questions.

41.     The questions common to all Class Members include, but are not limited to:

a.      Whether Defendant had implemented reasonable procedures to ensure that all third parties who accessed Plaintiff's and Class members' private credit information did so for a permissible purpose;

b.      Whether Defendant failed to notify consumers of the data breach within a reasonable period of time;

c.      Whether Defendant failed to block the reporting of information on consumers' files that were the result of the data breach;

d.      Whether Plaintiff and Class members suffered damages as a result of Defendant's failure to comply with FCRA based on the improper dissemination of their credit information as a result of the data breach;

e.      Whether Plaintiff and Class members are entitled to statutory damages; and

f.      Whether Plaintiff and Class members are entitled to punitive damages.

42.     In addition, questions of law and fact common to the proposed Maryland Class include, but are not limited to, whether Defendant's acts and/or omissions constitute a violation of the Maryland Consumer Protection Act.

11

43.     Plaintiff's claims are typical of the Nationwide Class and of the Maryland Class, as Plaintiff's personal information was compromised during the data breach.  All claims are based on the same legal and factual issues.

44.     Plaintiff will fairly and adequately represent the interests of both Classes and does not have an adverse interest to either Class.  Moreover, the interests of the Nationwide Class and the Maryland Class are not conflicting or divergent but, rather, are common.  Accordingly, Plaintiff can fairly and adequately represent the interests of both Classes.

45.     If individual class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.  A class action is the superior method for the quick and efficient adjudication of this controversy.

46.     Plaintiff's counsel has significant experience litigating class actions, including consumer class actions such as this one, are qualified and competent, and will vigorously prosecute this litigation.

47.     Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Classes, respectively, as a whole.

48.     Based on the actions of Defendant, Plaintiff seeks recovery for the claims alleged, *infra*, summarized as follows:

| COUNT STATUTE VIOLATED | SUMMARY OF CLAIM AND VIOLATIONS |
|---|---|

| **COUNT ONE**<br><br>15 U.S.C. 1681, *et seq.*<br><br>*FCRA* | Defendant's compromise of Plaintiff's personal information that was discovered on July 29, 2017 by Defendant violates 15 U.S.C. 1681e(a). |
|---|---|
| **COUNT TWO**<br><br>Md. Code Ann., Com. Law § 13-303, *et seq.* | Defendant's compromise of Plaintiff's personal information is an unfair or deceptive trade practice, as Defendant failed to maintain Plaintiff's personal information. |
| **COUNT THREE**<br><br>Negligence | Defendant's compromise of Plaintiff's personal information is a breach of Defendant's duty of care to protect Plaintiff's PII, which directly and proximately caused Plaintiff's injuries. |
| **COUNT FOUR**<br><br>Gross Negligence | Defendant's intentional, willful and wanton misconduct regarding the compromise of Plaintiff's personal information is a breach of Defendant's duty of care to protect Plaintiff's PII, which directly and proximately caused Plaintiff's injuries. |
| **COUNT FIVE**<br><br>Punitive Damages | Defendant's compromise of Plaintiff's personal information evidences conscious and deliberate wrongdoing constituting actual malice against Plaintiff. |

### COUNT ONE: VIOLATION OF 15 U.S.C. 1681, *et seq*.
### Nationwide Class and Maryland Class against Defendant

49.     Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

50.     Based upon Equifax's failure to have reasonable procedures in place, Plaintiff's private information was compromised, and neither Plaintiff nor any of the Class members received notice of the data breach, except through the media, approximately six (6) weeks after the breach occurred.

51.     As a result of each and every willful violation of FCRA, Plaintiff and the Nationwide Class Members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may

allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

52.    As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: MARYLAND CONSUMER PROTECTION ACT
### Maryland Class against Defendant

53.    Plaintiff restates all allegations contained in all preceding and subsequent paragraphs as if fully restated herein.

54.    This Count is brought on behalf of the Maryland Class pursuant to the Maryland Consumer Protection Act, Md. Code Ann., Com. Law ("CL") § 13-101 *et seq*.

55.    Plaintiff is a "consumer" within the meaning of CL § 13-101(c).

56.    Equifax is a "merchant" as that term is defined by CL § 13-101(g), as Equifax was, at all times relevant herein, engaged in soliciting "consumer services" as that term is defined in CL § 13-101(d) by soliciting an ongoing service, credit reporting and data aggregation of Plaintiff's personal information, to consumers in Maryland for primarily personal use within the meanings specified in CL § 13-101(c) and (d).

57.    Equifax is also a "person" as that term is defined by CL § 13-101(h), as Equifax was, at all times relevant herein, a legal or commercial entity.

58.    Equifax's breach of Plaintiff's information was deceptive and meets the requirements of CL § 13-303, which provides that no person shall commit an unfair or deceptive

14

trade practice in connection with a consumer service.  Such an unfair or deceptive trade practice by a person violates this section irrespective of whether any consumer has in fact been misled, deceived, or damaged as a result of that practice.

59.     As a direct and proximate result of the above violation of the Consumer Protection Act ("CPA"), Plaintiff and all Maryland Class Members have suffered injuries including, but not limited to mental anguish, emotional distress, fear, panic, stress, and the continued worry that their identities have been compromised and are being used fraudulently.

60.     Equifax's actions violate the CPA, and Plaintiff and all Maryland Class Members are entitled to receive actual damages, statutory damages, and attorneys' fees and costs.

61.     By trying to trick Maryland consumers by offering a "free" service of credit monitoring into signing a broad class action waiver and arbitration agreement, which would benefit only Equifax, Defendant engaged in a class bait and switch which is prohibited under the Maryland Consumer Protection Act.

62.     Defendant was on notice of prior administrative and judicial determinations that such bait and switch tactics violate the Maryland Consumer Protection Act.

63.     Defendant Equifax's actions as described herein, *supra*, further warrant Plaintiff and the Maryland Class Members requesting that this Court also provide a declaration pursuant to CL § 13-101 *et seq*. that any arbitration provision that Plaintiff or Subclass may be subjected to due to their use of https://www.equifaxsecurity2017.com/ is void.

## COUNT III:  NEGLIGENCE
### Nationwide Class and Maryland Class against Defendant

64.     Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

65.     Defendant owed Plaintiff and the Class Members a duty to, *inter alia,*

    a.  keep consumers' PII confidential;

    b.  enact appropriate measures and safeguards to adequately protect consumers' PII from unauthorized disclosure, including via theft or data breach; and

    c.  timely and adequately advise consumers of any unauthorized dissemination of that PII.

66.     Defendant knew or should have known that failing to adequately protect Class Members' PII would result in its unauthorized dissemination, including via theft or data breach, and would expose consumers to serious and ongoing harm.

67.     Defendant breached its legal duties by failing to safeguard, protect, and keep confidential Plaintiff's and the Class Members' PII, and by failing to adequately and timely advise Plaintiff and the Class Members that their data had been compromised and disclosed without authorization.

68.     As a direct and proximate cause of Defendant's negligence, Defendant created a foreseeable risk of harm to its consumers, including Plaintiff and the Class Members. Plaintiff's and the Class Members' injuries were caused solely by the Defendant, without any wrongdoing on the part of Plaintiff or the Class Members.

69.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class Members have suffered injury and incurred damages, including but not limited to the significantly decreased value of their PII and the future costs associated with protecting and reestablishing their financial identities.

### COUNT IV:  GROSS NEGLIGENCE
### Nationwide Class and Maryland Class against Defendant

70.     Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

71.     Defendant owed Plaintiff and the Class Members a duty to, *inter alia,*

   a.   keep consumers' PII confidential;

   b.   enact appropriate measures and safeguards to adequately protect consumers' PII from unauthorized disclosure, including via theft or data breach; and

   c.   timely and adequately advise consumers of any unauthorized dissemination of that PII.

72.     Defendant knew or should have known that failing to adequately protect Class Members' PII would result in its unauthorized dissemination, including via theft or data breach, and would expose consumers to serious and ongoing harm.

73.     Defendant breached its legal duties and engaged in intentional acts of gross negligence and reckless, intentional, willful, and wanton misconduct, on a continuing basis by failing to safeguard, protect, and keep confidential Plaintiff's and the Class Members' PII, and by

failing to adequately and timely advise Plaintiff and the Class Members that their data had been compromised and disclosed without authorization.

74.     Defendants' grossly negligent conduct directly and proximately caused the injuries sustained by Plaintiff and the Class Members.  Plaintiff's and the Class Members' injuries were caused solely by grossly negligent conduct of the Defendant without any wrongdoing on the part of Plaintiff or the Class Members.

75.     As a result of Defendant's grossly negligent conduct, Plaintiff and the Class Members have suffered injury and incurred damages, including but not limited to the significantly decreased value of their PII and the future costs associated with protecting and reestablishing their financial identities.

**COUNT IV:  PUNITIVE DAMAGES**
**Nationwide Class and Maryland Class against Defendant**

76.     Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

77.     Defendant's conduct in failing to safeguard Plaintiff's and the Class Members' valuable and highly sensitive PII, despite its knowledge that such safeguards were required and that a massive data breach was foreseeable, evidences evil motive, intent to injure, and ill will, and constitutes actual malice.

78.     Defendant's conduct in refusing to alert Plaintiff and the Class Members of the data breach that occurred on July 29, 2017 until at least six (6) weeks after the breach, and only after

numerous news articles drew attention to the issue, evidences evil motive, intent to injure, and ill will, and constitutes actual malice

79.     Defendant's conduct in willfully, intentionally, and knowingly depriving consumers, including Plaintiff and the Class Members, of the opportunity to seek any remedies available to them under FCRA evidences evil motive, intent to injure, and ill will, and constitutes actual malice.

80.     That Defendant and three of its executives consciously, deliberately, and maliciously profited, at Plaintiff's and the Class Members' expense, by selling $1,800,000 of shares in days following the data breach, further evidences evil motive, intent to injure, and ill will, and constitutes actual malice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Gallant Jr., individually and on behalf of both Classes, respectfully requests that he be awarded damages together with equitable relief as follows:

A)      Certify this case as a Class Action pursuant to Fed.R.Civ.P. 23(b)(1), (b)(2), (b)(3), and/or (c);

B)      Appoint Plaintiff as a Class Representative;

C)      Appoint Plaintiff's counsel as Class Counsel;

D)      Enter a judgment against Defendant, finding it is liable to Plaintiff and the Class Members;

E)      Award actual damages against Defendant;

F)      Award statutory damages pursuant to 15 U.S.C. § 1681n(a)(1) against Defendant for the allegations contained in Count One for each eligible Class member and Plaintiff;

G)      Award punitive damages against Defendant;

H)      Award statutory damages against Defendant for the allegations contained in Count Two of at least $500.00 per party to Plaintiff and all eligible Maryland Class members;

I)      Award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681(o)(1)(1) against Defendant for each incident of negligent noncompliance of FCRA alleged in Count One, and alternatively under the CPA as alleged in Count Two;

J)      Enter an order declaring the arbitration provisions and class action waiver provisions obtained by enticing consumers to sign up for "free" credit monitoring void pursuant to Md. Code Ann., Com. Law § 13-303 as alleged in Count Two; and

K)      Enter a Preliminary and Permanent injunction prohibiting Equifax from continuing to bait and switch consumers into signing a class action waiver and arbitration agreement.

L)      For all other relief this Court may deem just and proper.


                        Respectfully Submitted,


                        _/s/_Richard V. Falcon, Esq.
                        William H. Murphy III (Fed. Bar No. 30126)
                        William H. Murphy Jr. (Fed. Bar No. 07985)
                        Richard V. Falcon (Fed. Bar No. 01739)
                        MURPHY, FALCON & MURPHY
                        One South Street, Suite 2300
                        Baltimore, Maryland 21202
                        (410) 951-8744
                        (410) 539-6599 fax
                        billy.murphy@murphyfalcon.com
                        hassan.murphy@murphyfalcon.com
                        richard.falcon@murphyfalcon.com

                        Robert J. Weltchek (Fed. Bar No. 0954)
                        Kristopher A. Mallahan (Fed. Bar No. 28264)
                        Nolan J. Weltcheck (Fed. Bar No. 29825)

Nathan W. Hopkins (Fed. Bar No. 29802)
Megan E. Burns (Fed. Bar No. 29427)
WELTCHEK MALLAHAN & WELTCHEK, LLC
2330 West Joppa Road, Suite 203
Lutherville, Maryland 21093
(410) 825-5287
(410) 825-5277 fax
rweltchek@wmwlawfirm.com
kmallahan@wmwlawfirm.com
nweltchek@wmwlawfirm.com
nhopkins@wmwlawfirm.com
mburns@wmwlawfirm.com

Marc E. Dann
Brian D Flick
DANNLAW
P.O. Box 6031040
Cleveland, OH  44103
(216) 373-0539
(216) 373-0536 fax
notices@dannlaw.com
*Pro Hac Vice Applications to Be Submitted*

Andrew B. Sacks
John K. Weston
SACKS WESTON DIAMOND LLC
Suite 1600
1845 Walnut Street
Philadelphia, PA 19103
(215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com
*Pro Hac Vice Applications to Be Submitted*

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
(312) 440-4180 fax
tom@attorneyzim.com

*Pro Hac Vice Applications to Be Submitted*

Robert A. Clifford
Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090
(312) 345-1565 fax
rac@cliffordlaw.com
smm@cliffordlaw.com
*Pro Hac Vice Applications to Be Submitted*

David H. Krieger, Esq.
George Haines, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, NV 89123
(702) 880-5554
(702) 385-5518 fax
dkrieger@hainesandkrieger.com
ghaines@hainesandkrieger.com
*Pro Hac Vice Applications to Be Submitted*

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
(702) 825-6060
(702) 447-8048 fax
matthew.knepper@knepperclark.com
miles.clark@knepperclark.com
*Pro Hac Vice Application to Be Submitted*

Sean N. Payne
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
702-952-2733

22

(702) 462-7227 fax
seanpayne@spaynelaw.com
*Pro Hac Vice Application to Be Submitted*

*Counsel for Plaintiff and the Class*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Richard V. Falcon
Richard V. Falcon (Fed. Bar No. 01739)
William H. Murphy III (Fed. Bar No. 30126)
William H. Murphy Jr. (Fed. Bar No. 07985)
MURPHY, FALCON & MURPHY

Robert J. Weltchek (Fed. Bar No. 0954)
Kristopher A. Mallahan (Fed. Bar No. 28264)
Nolan J. Weltcheck (Fed. Bar No. 29825)
Nathan W. Hopkins (Fed. Bar No. 29802)
Megan E. Burns (Fed. Bar No. 29427)
WELTCHEK MALLAHAN & WELTCHEK, LLC

*Attorneys for Plaintiff and the Class*

23